Martindale *et ux. v.* Parsons *et al.*

No. 10,049.

MARTINDALE ET UX. *v.* PARSONS ET AL.

CONTRACT.—*Deed.*—*Encumbrance.*—The acceptance of a deed which provides that the grantee shall discharge an encumbrance upon the real estate conveyed to him binds him as by a written contract, and such contract inures to the benefit of the holder of the encumbrance.

SAME.—*Parol Evidence.*—The rule that a written contract can not be varied by oral evidence applies to a contract in a deed assuming the payment of an encumbrance, but if such contract is vague and ambiguous, oral evidence is admissible to explain the ambiguity.

MORTGAGE.—*Contract in Deed of Purchaser of Mortgaged Premises to Pay Encumbrance.*—*Ambiguity.*—*Parol Evidence.*—*Judgment.*—*Foreclosure.*—There was a mortgage on lot 13, to secure a series of five notes of $80 each, one of which became due each year during a period of five years, and a similar mortgage on lot 14 by the same person to the same creditor, of the same date, to secure another series of five notes precisely like the first series. P. took a conveyance of both lots, with a clause therein, thus: "Subject to a mortgage, dated February 1st, 1873, on each lot, to secure five notes for $80 each, the first due February 1st, 1874, and annually thereafter, the first with ten per cent. interest, the others with six per cent. interest, all of which the grantee, by the acceptance of this deed, assumes and agrees to pay." It appeared that P. had paid the first five notes presented to him, being the two first due charged on lot 13, and the three first due charged on lot 14.

*Held,* that the written contract of P. to pay, above recited, was ambiguous as to whether P. was to pay all the notes or only five of them, and, therefore, to aid in construing it, parol evidence was admissible to prove that his grantor represented to him when he purchased, that there were only five notes secured on both lots, and that these only he agreed to pay, having no knowledge that there were more.

*Held,* also, that P., having paid as above, was not liable to any personal judgment, though a foreclosure for the unpaid notes was proper.

From the Superior Court of Marion County.

*H. J. Milligan* and *C. Martindale,* for appellants.

*N. Morris, L. Newberger* and *F. Winter,* for appellees.

HAMMOND, J.—This was an action by the appellants against the appellees to foreclose two mortgages executed by the appellees Connelly and Shortridge to Stephen K. Fletcher, to

secure the payment of ten promissory notes, each for $80. One mortgage was on lot 13, more particularly described, and secured the payment of a series of five of said notes. The other mortgage was on lot 14, also more particularly described, and secured the payment of another series, the other five of said notes. It is shown in the complaint that by a succession of conveyances the title to the lots, subject to the mortgages, vested in John R. Mitchell, who afterwards conveyed them to the appellee Parsons, "who," it is alleged, "as part of the purchase price, by the terms of the conveyance, promised and agreed to pay said mortgage notes." The notes and mortgages were assigned to the appellants.

Parsons answered that he had paid the notes due one and two years after date, secured by the mortgage on lot 13, and also those due one, two and three years after date, secured by the mortgage on lot 14. As to the remaining notes, he offered no objection to the foreclosure of the mortgages for whatever sum might be unpaid. He admitted that he received the deed from Mitchell as alleged in the complaint, and still retained title to the lots, but denied having assumed the payment of any notes other than those already paid. He further averred that by the contract between him and Mitchell, he was to take the lots and assume an encumbrance of $400 thereon, in payment of $316.76, which he had been compelled to pay as surety for Mitchell. He also filed a cross complaint, setting up the foregoing facts and alleging that a mutual mistake was made in drawing the deed.

Appellants replied to the answer, and answered the cross complaint by general denial. No question is made as to the sufficiency of any of the pleadings. A trial by the court, upon appellants' request to find the facts specially and to state the conclusions of law thereon, resulted in the following special finding of facts and conclusions of law:

" On February 1st, 1873, the defendants Robert Connelly and William C. Shortridge executed to one Stephen K.

Fletcher a mortgage on lot No. 13, as described in the complaint, securing five notes of $80 each, of even date with said mortgage, due respectively in one, two, three, four and five years after date, all drawing six per cent. interest until maturity, and at the rate of ten per cent. per annum after maturity, except the first, which drew interest at the rate of ten per cent. interest from date, each of said notes providing for five per cent. attorney's fees, if suit should be instituted thereon. All given by the mortgagors to the mortgagee. On the same day said Connelly and Shortridge also executed to said Fletcher a similar mortgage on lot 14, as described in the complaint, securing five notes similar to those hereinbefore described. Said mortgages were duly recorded in Marion county, Indiana, said lots being situated in said county. Afterwards, on the 16th day of September, 1873, said Connelly and Shortridge conveyed said real estate to one Robert Munnell, who, on the 28th day of January, 1874, conveyed said real estate to John R. Mitchell, who afterwards, on March 11th, 1874, conveyed the same to the defendant Matthias Parsons, by a deed of tenor following:

" ' This indenture witnesseth: That John R. Mitchell and Elizabeth H. Mitchell, his wife, of Marion county, in the State of Indiana, convey and warrant to Matthias Parsons of Rush county, in the State of Indiana, for the sum of one thousand six hundred dollars, the following real estate in Marion county, in the State of Indiana, to wit, lots numbered thirteen (13) and fourteen (14), in block thirteen (13), in S. K. Fletcher's South Brookside addition to the city of Indianapolis. Subject to a mortgage, dated February the 1st, 1873, on each lot, to secure the payment of five promissory notes for the sum of eighty dollars each, the notes due, the first on the first day of February, 1874, and annually thereafter, the first note with ten per cent. interest, all of the remaining notes with six per cent. interest, all of which the grantee, by the acceptance of this deed, assumes and agrees to pay. In witness whereof the said John R. Mitchell and

Martindale *et ux. v.* Parsons *et al.*

Elizabeth H. Mitchell, his wife, have hereunto set their hands
and seals this 11th day of March, 1874.

    " ' JOHN R. MITCHELL.  [SEAL]

    " ' ELIZABETH H. MITCHELL. [SEAL]' "

 Which deed was duly acknowledged and recorded.

 The facts in relation to the conveyance from Mitchell to
Parsons were as follows:

 "Parsons as security for Mitchell had been compelled to pay
a judgment amounting to $320, and Mitchell had nothing
with which to repay Parsons except said lots 13 and 14, each
of which was encumbered as hereinbefore mentioned.

 "Mitchell represented to Parsons that there were in all only
five notes charged upon both lots, which he described as of
$80 each and amounting to $400 together, but gave no par-
ticular description thereof.

 "Relying upon Mitchell's representations, Parsons agreed
that if Mitchell would convey said lots to him, Parsons, he
would release his claim against Mitchell and also assume and
pay said five notes of $80 each.

 "The conveyance by Mitchell to Parsons was thereupon
made and delivered pursuant to said agreement. Parsons was
unable to read the deed at the time of its execution, but it
was read to him by Mitchell, and from his representations
Parsons supposed that it conformed to said agreement. He
recorded and has ever since had possession of said deed. He
subsequently paid five notes of $80 each, the first five notes
presented to him, which were the one and two year notes
charged upon lot 13, and the one, two and three year notes
charged upon lot 14, as described in the complaint.

 "The residue of the notes charged upon said lots 13 and
14 are due and unpaid.

 "At the time of the conveyance, and ever since, Parsons
has resided in Rush county, Indiana. At the time of the
conveyance he had no knowledge of the existence of more
than five notes charged upon said two lots, and did not learn

 

of the existence of the other five notes until nearly three years after he had completed the payment of the five notes paid by him as aforesaid. Notice of the acceptance by the plaintiffs of the agreement contained in said deed and demand of payment of said five unpaid notes was properly served on the defendant Parsons before this suit was brought.

"The defendants Shortridge and Connelly were admitted by all parties to be discharged by bankruptcy, and plaintiffs asked no personal judgment against John R. Mitchell.

"There is due to the plaintiffs upon the notes as chargeable upon lot 13 the sum of $412, and upon the notes as chargeable upon lot 14 the sum of $274.68, each sum payable without relief from valuation or appraisement laws, with interest at six per cent.

"That upon the foregoing facts the court finds and states the following conclusions of law:

"*First.* That upon the foregoing facts the plaintiff is not entitled to any personal judgment against defendant Parsons.

"*Second.* The plaintiff is entitled to judgment against all of the defendants for a foreclosure of said mortgage.

"Daniel Wait Howe, Judge."

The appellants excepted to the conclusions of law, and, over their motion for a new trial and exceptions, a decree was rendered in accordance with such conclusions. The grounds upon which the new trial was asked were, that the court erred in permitting Parsons to testify to the terms of his contract with Mitchell, and that the findings and decision were not sustained by sufficient evidence, and were contrary to law.

We have carefully examined the evidence. It is without conflict, and very fully sustains the special finding of facts. The only question in the case is whether the appellants are entitled to a personal judgment against Parsons, and this must be settled by the construction of the contract of assumption in the deed made to him by Mitchell. It is claimed by the appellants that such assumption embraced the ten notes secured by both mortgages. Parsons, however, insists that his

contract made him personally liable for the payment of only five of the notes.

It is earnestly urged by appellants' counsel that there was error in permitting Parsons to testify to the terms of his contract with Mitchell, and that his evidence of the parol agreement can not be considered in interpreting the written contract of assumption in Mitchell's deed to him. The acceptance of a deed, which provides that the grantee shall discharge an encumbrance upon the real estate conveyed to him, binds him as by a written contract, and such contract inures to the benefit of the holder of the encumbrance. And the rule that a written contract can not be added to, subtracted from, or in any way varied by oral evidence applies to a contract in a deed assuming the payment of an encumbrance, the same as to other written agreements. "But," as was said in *Mace* v. *Jackson*, 38 Ind. 162, "the rule is equally as firmly established, and strongly sustained by authority and on principle, that parol evidence is admissible to give effect to a written instrument, by applying it to the subject-matter, by proving the circumstances under which it was made; and where there are equivocal expressions used in a written instrument, parol evidence is admissible to show in what sense they were used by the parties." Citing *Evansville, etc., R. R. Co.* v. *Shearer*, 10 Ind. 244; *Bradley* v. *Washington, etc., Co.*, 13 Pet. 89; 3 Stark. Ev. 1021; 1 Greenl. Ev. 325.

In *Harris* v. *Doe*, 4 Blackf. 369, it is said: "We are aware that no general doctrine of law is better settled, than that an instrument of writing can not be varied or contradicted by extrinsic evidence—whether documentary or parol. But it is also settled, that when such an instrument, especially if it be a grant or a charter, is so equivocally expressed as to render it doubtful to what object it refers, * * * it is competent to resort to evidence *aliunde*—even parol testimony—for the purpose of ascertaining that object, or of explaining and elucidating the ambiguity which creates the difficulty." See, also, *Durland* v. *Pitcairn*, 51 Ind. 426, 445; *Price* v. *Price*, 89

Ind. 90; *Knick* v. *Knick*, 75 Va. 12; *Mason* v. *Ryus*, 26 Kan. 464; *Clark* v. *Woodruff*, 83 N. Y. 518; *Griffiths* v. *Hardenbergh*, 41 N. Y. 464; *Blossom* v. *Griffin*, 13 N. Y. 569; *Reed* v. *Ins. Co.*, 95 U. S. 23; *Sargent* v. *Adams*, 3 Gray, 72; *Reissner* v. *Oxley*, 80 Ind. 580.

Neither the special finding of facts nor the evidence authorizes the reformation of the contract of assumption in the deed from Mitchell to Parsons, on the ground of mutual mistake in its execution. It is obvious, therefore, that if such contract clearly binds Parsons to pay all the notes secured by both mortgages, it was error to receive parol evidence to show a contrary intention. But looking to the deed alone, the contract of assumption is couched in such ambiguous language as to leave the matter in doubt whether Parsons agreed to pay all, or only five of the notes. The following is the contract of assumption : " Subject to a mortgage, dated February the 1st, 1873, on each lot, to secure the payment of five promissory notes for the sum of eighty dollars each ; the notes due, the first on the first day of February, 1874, and annually thereafter, the first with ten per cent. interest, all the remaining notes with six per cent. interest, all of which the grantee by the acceptance of this deed assumes and agrees to pay." It is plain from the above language, that two mortgages were referred to, one on each lot, but whether each mortgage secured the payment of a series of five notes, or whether both mortgages together secured the payment of only five notes, is left in doubt. It might have been made plain by inserting the word *both* or *each* before the words " to secure," or using other language making the meaning clear. But this was not done, and as the contract of assumption was left vague and ambiguous in its meaning, we think it falls within the rule that recourse may be had to extrinsic facts and circumstances and to parol evidence, not for the purpose of varying or contradicting the written assumption, but with the view of ascertaining the real intention of the parties in

Martindale *et ux. v.* Parsons *et al.*

the language used by them therein to express their meaning. The mortgages being on record, were constructive notice to Parsons, so that he could make no purchase of the lots to the prejudice of the rights of the mortgagee. But such constructive notice can not be considered for the purpose of ascertaining Parsons' intention as to the contract of assumption, as all the actual knowledge he had of the mortgages was derived from representations made by Mitchell. By these representations, he supposed there were only five notes of $80 each, chargeable upon both lots, and the parol agreement was that he was to pay off five notes of $80 each. Now when the contract of assumption contained in the deed is read in the light of Parsons' understanding as to the amount of the encumbrance upon both lots and of his parol agreement to pay only five notes, it is quite clear that such contract embraced in the deed was intended to conform to the parol agreement. It can, without doing violence to the language, be read and construed in harmony with the verbal understanding between the parties, and this interpretation seems to us to be just and right.

We are of the opinion that the parol evidence complained of was properly admitted to aid the court in construing the contract of assumption, and that the court correctly construed such contract.

The only thing in the evidence or the special findings, that can militate against the view we have taken, is the fact that Parsons paid a part of each series of the notes. But this, it would seem, is sufficiently explained by other facts, namely, that he paid the notes as they were presented, and did not for a long time after he paid the five notes know that there were any others. He paid the five notes, supposing they were the ones covered by his contract. The gist of his contract really was that he was to pay an encumbrance of $400, evidenced by five notes of $80 each. Although he did not pay all of the identical notes mentioned in his agreement, the

payment of others which he supposed were the notes which he agreed to pay should be held to be a discharge of his contract. We may suppose that the mortgagee presented the notes which he first desired paid, and that the payment of a part of the notes of each series, instead of all the notes of one series, was a matter of no concern to him.

The court below did not err in its conclusions of law, nor in overruling appellants' motion for a new trial.

Affirmed, with costs.

Filed Nov. 11, 1884.